UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

NM HOLDINGS COMPANY, LLC,                        Case No. 03-48939
f/k/a VENTURE HOLDINGS COMPANY, LLC,             Hon. Thomas J. Tucker
et al.,                                          Chapter 7 (Jointly Administered)

      Debtors.
_____/

STUART A. GOLD, CHAPTER 7 TRUSTEE
OF NM HOLDINGS COMPANY, LLC, et al.
f/k/a VENTURE HOLDINGS COMPANY, LLC, et al


      Plaintiffs,

v.                                               Adv. Pro. No. 04-5178

NOVA INDUSTRIES, INC., et al,

      Defendants.

_____/

**OPINION ON MOTIONS TO DISMISS AMENDED COMPLAINT**

This is a preference case in which the Chapter 7 Trustee seeks to avoid and recover a total

of $9.4 million.  Six of the defendants filed motions to dismiss the Plaintiff-Trustee's amended

complaint.  The Trustee opposes the motions, except as to transfers alleged in the amended

complaint to have been made by an entity referred to as "Canada."  The Trustee consents to the

dismissal of any claims to avoid and recover transfers made by "Canada," because "Canada"

refers to an entity that did not file bankruptcy.

The motions to dismiss raise issues about (1) the level of detail that must be alleged in

order to state a claim, under Fed.R.Civ.P. 8 and 12(b)(6), for avoidance of preferential transfers;

and (2) whether the amended complaint relates back to the date of the original complaint under Fed.R.Civ.P. 15(c)(2). For the reasons discussed below, except as to transfers made by "Canada," the Court will deny the motions to dismiss.

## I. Background

### A. Procedural history

#### 1. The Venture Holdings bankruptcy cases

Venture Holdings Company LLC and ten related entities[1] filed voluntary chapter 11 bankruptcy petitions on March 28, 2003. The cases are jointly administered under Case No. 03-48939. An official unsecured creditors committee was formed on April 13, 2003.

Ultimately, the Court denied confirmation of Debtors' second amended joint chapter 11 plan, on January 21, 2005. The Court later approved the sale of substantially all of the Debtors' assets. The sale closed on May 2, 2005.[2] On January 11, 2006, Debtors' Chapter 11 cases were converted to Chapter 7. Stuart A. Gold was appointed as the Chapter 7 Trustee on January 19, 2006.

#### 2. This adversary proceeding

---

[1] These entities were: Vemco, Inc. (Case #03-48940), Venture EU Corporation (Case #03-48941), Venture Leasing Company (Case #03-48942), Venture Service Company (Case #03-48943), Vemco Leasing, Inc. (Case #03-48944), Venture Mold & Engineering Corporation (Case #03-48945), Venture Industries Corporation (Case #03-48946), Experience Management LLC (Case #03-48947), Venture Europe, Inc. (Case #03-48948), and Venture Holdings Corporation (Case #03-48949).

[2] As a result of this sale, Debtors changed their names to: NM Holdings Company LLC (f/k/a Venture Holdings Company LLC), NM Emco, Inc. (f/k/a Vemco, Inc.), NM EU Corporation (f/k/a Venture EU Corporation), NM Old Leasing Company (f/k/a Venture Leasing Company), NM Service Company (f/k/a Venture Service Company), NM Nemco Leasing, Inc. (f/k/a Vemco Leasing, Inc.), NM Mold & Engineering Corporation (f/k/a Venture Mold & Engineering Corporation), NM Industries Corporation (f/k/a Venture Industries Corporation), NM Exp LLC (f/k/a Experience Management LLC), NM Europe, Inc. (f/k/a Venture Europe, Inc.), and NM Holdings Corporation (f/k/a Venture Holdings Corporation).

On April 5, 2004, while the Venture bankruptcy cases were still in Chapter 11, Debtors and the creditors' committee jointly filed a thirteen count complaint ("Original Complaint") against 31 defendants, in adversary proceeding number 04-4373. In Count XI of the Original Complaint, Plaintiffs sought the avoidance and recovery of preferential transfers against a group of defendants identified as the "Corporate Preference Defendants." These eight defendants were Nova Industries, Inc.; Shefco, Inc.; TIG Interior Design, LLC; UV Automotive Group; Lot Finishers, Inc.; Windall Industries, Inc.; Acropolis Resort, LLC; and Lakeland Financial Advisory Services, Inc.

On August 30, 2005, the Court granted a motion by Plaintiffs to sever their preference claims against the "Corporate Preference Defendants" from the claims against the other defendants in the Original Complaint.[3] The severed claims are now the subject of this adversary proceeding (Case No. 04-5178).

On October 26, 2005, Plaintiffs filed an amended complaint.[4] In response, six of the defendants moved for dismissal of the Amended Complaint, for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6).[5]

---

[3] (*See* "Order Granting the Debtors' Motion to Sever Claims Against The Corporate Preference Defendants From Claims Against Non-Preference Defendants" (Docket # 102 in Adv. Pro. # 04-4373 and Docket # 1 in this proceeding).)

[4] (Docket #10).

[5] (*See* "Motion of Defendant TIG Interior Design, LLC To Dismiss The Amended Complaint To Avoid And Recover Preferential Transfers" (Docket # 14); "Joint Motion Of Defendants Nova Industries Inc., Windall Industries, Inc., And Acropolis Resort, LLC To Dismiss The Amended Complaint To Avoid And Recover Preferential Transfers" (Docket # 15); and "Joint Motion Of Defendants Shefco, Inc. And Lot Finishers, Inc. To Dismiss The Amended Complaint To Avoid and Recover Preferential Transfers" (Docket # 16).) Defendant UV Automotive Group did not file a dismissal motion and did not appear at any of the relevant hearings. Defendant Lakeland Financial Advisory Services, Inc. was voluntarily dismissed from the case. *See* footnote 11 *infra*.

After his appointment, the Trustee substituted as Plaintiff in this adversary proceeding, and opposed the dismissal motions. The Court held a hearing on the motions, and then permitted the parties to file supplemental briefs regarding certain issues raised at the hearing. After the supplemental briefing, the Court held a further hearing on May 2, 2007, and then took the motions under advisement.

## B. The Original Complaint

In the only count of the Original Complaint relevant to this case, Count XI, Plaintiffs sought to avoid and recover alleged preferential transfers under 11 U.S.C. §§ 547(b) and 550(a). Details about the preferential transfers were set forth in a two-page table, which according to the complaint, "summarizes the minimum preferential transfers" alleged to be avoidable. The table did not list every transfer individually. Rather, for each Debtor who made transfers, the table listed the total amounts transferred to each defendant, by each of the following methods: "Wire and ZBA Transfers," "ACH," and "Checks."[6] As to the six Defendants who have moved for dismissal, the table listed the following transfer totals:[7]

| Defendant Nova Industries transfers by: | Checks | Total |
|---|---|---|
| Venture Industries (Interior) | $ 559,344.67 | $ 559,344.67 |
| Venture Mold & Engineering | $ 126.40 | $ 126.40 |
| Venture Holdings (Bailey) | $ 251,517.74 | $ 251,517.74 |
| Venco | $1,226,519.91 | $1,226,519.91 |
| Venture Industries Canada | $ 189,442.04 | $ 189,442.04 |
| **Total for this Defendant** | | **$2,226,950.76** |

---

[6] (Compl. ¶ 553).

[7] In the table presented in this opinion, the Court has reorganized the information contained in the Original Complaint table, to group the transfers by defendant. And the Court has added to this table, in bold, the total amount of transfers to each defendant.

-4-

**Defendant Shefco, Inc.**

| transfers by: | Checks | | Total | |
|---|---|---|---|---|
| Venture Industries (Interior) | $ | 202,086.73 | $ | 202,086.73 |
| Venture Mold & Engineering | $ | 20,113.84 | $ | 20,113.84 |
| Venture Holdings (Bailey) | $ | 660,506.78 | $ | 660,506.78 |
| Venture Service | $ | 11,551.54 | $ | 11,551.54 |
| Venco | $ | 797,709.96 | $ | 797,709.96 |
| Venture Industries Canada | $ | 27,141.11 | $ | 27,141.11 |
| **Total for this Defendant** | | | **$1,719,109.96** | |

**Defendant TIG Interior Design, LLC**

| transfers by: | Checks | | Total | |
|---|---|---|---|---|
| Venture Industries (Interior) | $ | 13,696.47 | $ | 13,696.47 |
| Venture Service | $ | 114,291.10 | $ | 114,291.10 |
| Venture Industries Canada | $ | 21.20 | $ | 21.20 |
| **Total for this Defendant** | | | **$ 128,008.77** | |

**Defendant Lot Finishers, Inc.**

| transfers by: | Checks | | Total | |
|---|---|---|---|---|
| Venture Mold & Engineering | $ | 308.00 | $ | 308.00 |
| **Total for this Defendant** | | | **$ 308.00** | |

**Defendant Windall Industries, Inc.**

| transfers by: | Checks | | Total | |
|---|---|---|---|---|
| Venture Mold & Engineering | $ | 56,000.00 | $ | 56,000.00 |
| **Total for this Defendant** | | | **$ 56,000.00** | |

**Defendant Acropolis Resort, LLC**

| transfers by: | Checks | | Total | |
|---|---|---|---|---|
| Venture Service | $ | 94,148.40 | $ | 94,148.40 |
| **Total for this Defendant** | | | **$ 94,148.40** | |

Count XI also contained general allegations that mirrored the statutory language of

§ 547(b).[8] With regard to the time period in which the transfers were made, the Original

---

[8] Subject to certain exceptions, Section 547(b) states in relevant part that

the trustee may avoid any transfer of an interest of the debtor in property —

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made —

Complaint alleged only that the transfers were "made on or between ninety days and one year before the Petition Date to an insider[.]"[9]  The Complaint demanded judgment "in an amount subject to proof at trial but not less than the amounts set forth herein."[10]

### C.  The Amended Complaint

The Amended Complaint seeks avoidance and recovery of preferential transfers against seven of the original eight defendants, namely: Acropolis Resort, LLC; Lot Finishers, Inc.; Nova Industries, Inc.; Shefco, Inc.; TIG Interior Design, LLC; UV Automotive Group; and Windall Industries, Inc. (the "Defendants").[11]  The Amended Complaint includes the following allegations.  The "Defendants did business with the Debtors prior to the Petition Date."[12]  "Debtors made one or more transfers by check, wire transfer, or its equivalent, of an interest in

---

(A) on or within 90 days before the date of filing of the petition;
(B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if —
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

[9] (Compl. at 86, ¶ 552(e)).

[10] (*Id*. at 89).

[11]  Although named in the Original Complaint, Lakeland Financial Advisory Services, Inc., was voluntarily dismissed as a defendant in this adversary proceeding. (*See* "Notice of Voluntary Dismissal of Lakeland Financial Advisory Services, Inc. With Prejudice By Plaintiffs Pursuant To Fed. R. Civ. P. 41(a)(1) And Fed. R. Bankr. P. 7041" (Docket # 5)).

[12] (Amd. Compl. at 2, ¶ 5 (Docket # 10)).

property of the Debtors in an aggregate amount not less than the amounts set forth in Exhibit A . .

. on or within one year before the Petition Date."[13]

Exhibit A to the Amended Complaint is a 49-page, six-column chart, listing almost 4,000 separate transfers. The headings of the columns in the chart include a column named "Trust Company" which identifies the transferor; and: "Vendor Name," "Check Date," "Check Number," "Check Amount," and "Date Check Cleared Bank." The chart contains a separate section for each Defendant, and lists details about each specific transfer under the appropriate column. It also lists a total amount for all of the transfers sought to be avoided and recovered from each Defendant.

In the Amended Complaint, Plaintiffs allege avoidable transfers in the following total amounts:[14]

| Defendant | Total |
|-----------|-------|
| Acropolis Resort | $94,148.40 |
| Lot Finishers, Inc. | $308.00 |
| Nova Industries, Inc. | $2,226,950.76 |
| Shefco, Inc. | $1,719,109.96 |
| TIG Interior Design | $128,008.77 |
| UV Automotive Group | $5,150,858.13 |
| Windall Industries, Inc. | $56,000.00 |

These are the same total amounts that were alleged as to each of these defendants in the Original Complaint.

## II. Jurisdiction

---

[13] (*Id.* at 2, ¶ 6).

[14] (*See* Ex. A of Amd. Compl. at 1, 11, 38, 39, 49 (Docket # 10)).

This Court has subject matter jurisdiction under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (F).

## III. Applicable legal standards

A motion brought under Fed.R.Civ.P. 12(b)(6) tests the "sufficiency of [a] complaint." *Conley v. Gibson*, 355 U.S. 41, 46 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236-37 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984). Under "the Federal Rules of Civil Procedure, a plaintiff is required to provide a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. at 47 (*citing* Rule 8(a)(2), 28 U.S.C.A.). "A court considering a motion to dismiss under Rule 12(b)(6) 'must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff.'" *Benzon v. Morgan Stanley Distributors*, 420 F.3d 598, 605 (6th Cir. 2005)(*quoting Inge v. Rock. Fin. Corp*., 281 F.3d 613, 619 (6th Cir. 2002)(*citing Turker* v. *Ohio Dep't of Rehab. & Corr*., 157 3d 453, 456 (6th Cir. 1998))). A court should deny a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. at 48.

## IV. Discussion

### A. Defendants' arguments

Defendants argue that the Amended Complaint, either in its entirety or, at a minimum, certain portions of it, cannot relate back to the date of the Original Complaint under Fed.R.Civ.P. 15(c)(2) and must be dismissed because it is barred by the two year statute of limitations in 11 U.S.C. § 546(a). Alternatively, Defendants argue that even if the Amended Complaint relates back to the date of the Original Complaint, it still must be dismissed because it fails to meet the minimum notice-pleading requirements of Fed.R.Civ.P. 8(a). The Trustee disputes these contentions.

### B. Relation back of the Amended Complaint to the date of the Original Complaint

The parties agree that the Amended Complaint was filed after the two-year limitation period of 11 U.S.C. § 546(a) expired.[15] To be viable, then, the Amended Complaint must relate back to the filing date of the Original Complaint under Fed.R.Civ.P. 15(c)(2), which is incorporated by Fed.R.Bankr.P. 7015. Civil Rule 15(c)(2) states that:

> [a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading[.]

Fed.R.Civ P. 15(c)(2).

In an instructive case, *Miller v. American Heavy Lift Shipping*, 231 F.3d 242 (6th Cir. 2000), the United States Court of Appeals for the Sixth Circuit emphasized the liberal nature of the notice-pleading and relation-back principles of the Federal Rules of Civil Procedure. In *Miller,* the administrator of the estates of five deceased seamen filed separate survival and

---

[15] Under 11 U.S.C. § 546(a), the limitations period applicable in this case required that § 547 actions be commenced within two years after the entry of the orders for relief in the Venture Holdings bankruptcy cases. The Venture Holdings bankruptcy petitions were all filed on March 28, 2003, so the two-year limitation period ended on March 28, 2005. The Original Complaint was timely filed, on April 5, 2004. The Amended Complaint was filed on October 26, 2005.

wrongful death actions under the Jones Act and general admiralty and maritime law, against certain shipowners and operators. Each action was filed before the expiration of the applicable three year statute of limitations. In the original complaints, the plaintiff alleged that the deceased seamen had suffered from "injuries as a result of their exposure to asbestos and to hazardous substances other than asbestos[.]" *Id*. at 245. The injuries sustained by the seamen were not specified. After the expiration of the three year statute of limitations, the plaintiff filed amended complaints alleging the same theories of liability. But the injury of each of the seamen was alleged to be "leukemia" due to "exposure to benzene and benzene-containing products." *Id*. at 246.

The defendants sought summary judgment, arguing that the amended complaints were time barred because they did not relate back to the date of the original complaints. This was so, defendants argued, because the amended complaints contained new allegations concerning an injury sustained from exposure to benzene, which was different than the injuries sustained from exposure to asbestos as alleged in the original complaints.

The district court in *Miller* granted summary judgment for the defendants and found that "Miller's original allegation that seamen had been exposed to 'hazardous substances other than asbestos' was insufficient to put [defendants] on notice of the benzene-related claims, and concluded that 'taken to its logical conclusion, [p]laintiff's position means the [d]efendants are forever on notice of claims arising out of exposure to any hazardous substance.'" *Id*. at 246. The district court held that the amended complaint did not relate back to the date of the original complaint under Fed.R.Civ.P. 15(c)(2).

In reversing the district court, the court of appeals emphasized the liberality of the notice-pleading and relation-back principles in the civil rules:

There can be no dispute that our modern rules of civil procedure are based on the concept of "simplified 'notice pleading,' and that "[a]ll pleadings shall be so construed as to do substantial justice." This can indeed be seen in the basic requirements for a claim for relief as set forth in Rule 8(a), and in the dictate of Rule 15(a), which states that a court shall grant a party leave to amend a complaint "freely ... when justice so requires." **This fundamental tenor of the Rules is one of liberality rather than technicality,** and it creates an important context within which we decide cases under the modern Federal Rules of Civil Procedure.

. . .

[W]hether a statute of limitations will be permitted to bar an amended claim turns on whether the amended claim arose out of the same conduct, transaction, or occurrence as that set forth in the original complaint:

> The rule is based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading.

**This court has stated that "the thrust of Rule 15 is to reinforce the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" Thus, a court will permit a party to add even a new legal theory in an amended pleading as long as it arises out of the same transaction or occurrence. Likewise, [a]n amendment that alleges added events leading up to the same injury may relate back.**

*Miller v. American Heavy Lift Shipping*, 231 F.3d at 247-48 (bold emphasis added, internal citations omitted).

In addition, the Sixth Circuit rejected the use of two particular tests sometimes used by courts in deciding whether an amendment relates back under Rule 15(c)(2), which were "1) whether the evidence offered in support of the original claim would prove the new claim, and 2) **whether the new claim alters the "when, where, what, or how" of the alleged injury**."

*Miller*, 231 F.3d at 250 n.6 (emphasis added). The Sixth Circuit held that these tests were "too mechanical for the liberal approach of Rule 15(c)." *Id.* (citing 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1498, at 102-03).

-11-

### C. Pleading requirements in preference actions and the Original Complaint

Defendants assert that the Amended Complaint cannot relate back to the date of the

Original Complaint because the allegations in the Original Complaint itself failed to provide

Defendants with "fair notice" of the preference claims against them, and therefore did not satisfy

the pleading requirements of Fed.R Civ.P. 8(a). As Defendants put it:

> The only factual information provided [in the original Complaint] was aggregate
> totals of transfers alleged to have been made by certain Debtors to each of the
> Defendants; the only other allegations were naked recitals of certain statutory
> elements. The overall effect of the Debtors' insufficiently pled first attempt at the
> complaint would have required Defendant[s] to engage in a guessing game to
> determine the dates of the checks, check numbers, the antecedent debt, the identity
> of the transferors, and the amount of the preference allegations. Because of the
> [Original] Complaint's inadequacies, Defendant[s were] completely unable to
> perform new value, contemporaneous exchange, or ordinary course analyses.[16]

Defendants argue that to state a valid preference claim, Plaintiffs were required to plead

certain facts about each individual transfer alleged to be avoidable. In support of their position,

Defendants rely on *Valley Media*, *Inc.*, *v. Borders, Inc.*, (*In re Valley Media*, *Inc.*), 288 B.R. 189

(Bankr. D. Del. 2003) and *Lomas Financial Corp.*, *v. Posman* (*In re Posman*), 1999 WL

33742299 (Bankr. D. Del., July 28, 1999), which held that

> the following information must be included in a complaint to avoid preferential
> transfers in order to survive a motion to dismiss: (a) an identification of the nature
> and amount of each antecedent debt and (b) an identification of each alleged
> preference transfer by (i) date, (ii) name of the debtor/transferor, (iii) name of
> transferee, and (iv) the amount of the transfer.

---

[16] (*See* Br. in Supp. of "Motion of Defendant TIG Interior Design, LLC To Dismiss The
Amended Complaint To Avoid And Recover Preferential Transfers" at 6 (Docket # 14)); Br. in Supp. of
"Joint Motion Of Defendants Nova Industries Inc., Windall Industries, Inc., And Acropolis Resort, LLC
To Dismiss The Amended Complaint To Avoid And Recover Preferential Transfers" at 6 (Docket # 15));
and Br. in Supp. of "Joint Motion Of Defendants Shefco, Inc. And Lot Finishers, Inc. To Dismiss The
Amended Complaint To Avoid and Recover Preferential Transfers" at 5-6 (Docket # 17)).

*Valley Media*, 288 B.R. at 192 (citing *In re Posman*, 1999 WL 33742299 at *2). The courts in both *Valley Media* and *Posman* found that the complaints in each case failed to comply with these pleading requirements because their allegations pled the total aggregate amounts for transfers that occurred during the 90 day preference period instead of allegations specific to each transfer. In these cases, the court granted the dismissal motion, but allowed plaintiffs to file amended complaints to provide the required information.

The Trustee replies that this is a "heightened pleading"[17] standard for preference complaints that is contrary to the language and intent of Civil Rule 8(a). The Trustee relies on *IT Group v. Brandywine Apts*., (*In re IT Group*), 313 B.R. 370 (Bankr. D. Del. 2004); *Neilson v. Sheri Southern* (*In re Webvan Group, Inc.*), 2004 WL 438580 (Bankr. D. Del. March 9, 2004); and *Family Golf Centers, Inc., v. Acushnet Company and Fortune Brands, Inc.* (*In re Randall's Island Family Golf Centers, Inc.*), 290 B.R. 55 (Bankr. S.D.N.Y. 2003). In each of these cases, the courts declined to follow *Valley Media* and *In re Posman*. As the court in *IT Group* reasoned,

> While plaintiffs should be encouraged to provide specific information in support of their claims whenever possible, to require them to do so in their initial pleading in all cases, particularly with the specificity demanded by *Valley Media,* is in this court's view inappropriate and unnecessarily harsh. The fact that Bankruptcy Rule 7008, which contains special pleading requirements in certain adversary cases before bankruptcy judges, fails to provide any such additional requirements for preference actions indicates it was intended that the adequacy of pleadings in such actions be judged under the notice pleading standard of Civil Rule 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." So long as the defendant is provided "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the complaint should not be dismissed for failure to state a claim. Further elaboration, if required, may be obtained through the discovery process.

---

[17] (*See* Trustee's "Consolidated Response to Defendants' Motions to Dismiss" at 4-5 (Docket #22)).

*In re The IT Group, Inc.*, 313 B.R. at 373 (internal citation omitted).

The court in *Randall's Island* disagreed with the holding of *Valley Media* for two reasons:

First, the Federal Rules of Bankruptcy Procedure do not impose a heightened pleading standard on preference claims, and a preference complaint may provide a defendant with fair notice of the claim despite the lack of information required by *Valley Media.* Furthermore, the complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The liberal pleading rules shift the focus away from motions directed at the pleadings and towards discovery and motions for summary judgment or other dispositions on the merits. For this reason, while the information identified by *Valley Media* might ultimately be necessary to adjudicate the preference claims, it does not follow that it must be pleaded on pain of dismissal.

Second, a heightened pleading standard may have the unintended effect of cutting off valid claims prematurely. Too often, debtors fail to maintain complete books and records, or a trustee inherits books and records that he cannot interpret. In those circumstances, the debtor or trustee may not be able to satisfy the heightened pleading standard enunciated in *Valley Media,* foreclosing the assertion of claims intended to benefit the creditors.

*In re Randall's Island Family Golf Centers, Inc*. 290 B.R. 55, 65 (Bankr. S.D.N.Y. 2003)

(internal citation omitted).

The Court agrees with the reasoning expressed in *IT Group* and *Randall's Island*. The heightened pleading requirements imposed by the *Valley Media* case are inconsistent with the liberal notice-pleading principles underlying the civil rules, as described by the Sixth Circuit in the *Miller* case, quoted above. This Court is, of course, bound to follow *Miller*.

Considering all of the relevant allegations in the Original Complaint and drawing all reasonable inferences in favor of the Trustee, the Court finds that the Original Complaint contained "a 'short and plain statement of the claim' that gave Defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. at 47

(*citing* Rule 8(a)(2), 28 U.S.C.A.). Because of this, the Original Complaint was not, as Defendants argue, a nullity to which no amended complaint could relate back.

The Original Complaint informed Defendants that Plaintiffs sought to avoid and recover preferential transfers under 11 U.S.C. §§ 547(b) and 550(a). Through the allegations set forth in a table, the Original Complaint identified (1) the name of each debtor/transferor; (2) the name of each defendant/transferee; (3) the form of transfers (checks); and (4) the total amount of the alleged preferential transfers made by a particular debtor/transferor to each defendant/transferee. This provided ample and fair notice to each of the Defendants of "what the plaintiff's claim is and the grounds upon which it rests," as required by *Conley v. Gibson.* And Defendants were not unduly hindered in their ability to file an answer and to assert any pertinent affirmative defenses. Further, to the extent Defendants were unable to *fully* defend themselves or *fully* assert possible defenses because of any details missing from the Original Complaint, the Civil Rules gave them ways to cope with the problem. Defendants could seek full details about the transfers in discovery, and then amend their answers if necessary. The Court concludes that the Original Complaint met the liberal pleading requirements of Civil Rule 8(a).

### D. Allegations of additional or new transfers in the Amended Complaint

Three of the Defendants — Nova Industries; Shefco, Inc.; and TIG Interior Design LLC — contend that the Amended Complaint alleges new preference claims by including transfers to them that occurred during the 90 days immediately before the petition date. According to these Defendants, the Original Complaint only alleged as avoidable transfers those that were made during the extended preference period — *i.e.*, between 90 days and one year before the petition date — applicable to insiders under 11 U.S.C. § 547(b)(4)(B). Therefore, Defendants argue, to the extent the Amended Complaint seeks to avoid any transfers that were made during the 90

-15-

days immediately preceding the bankruptcy petition date, the Amended Complaint does not relate back to the date of the Original Complaint. According to Defendants, these are "new claims" that do not arise out of the conduct, transaction(s), or occurrence(s) set forth in the Original Complaint. These "new claims," therefore, are time-barred under § 546(a).

The premise of Defendants' argument is that because the Original Complaint alleged that the transfers at issue occurred "on or between 90 days and one year before the Petition Date," the universe of transfers to be avoided included only those transfers that occurred during that extended preference period. Defendants' premise is flawed.

Unlike the Amended Complaint, the Original Complaint did not separately identify each preferential transfer — *i.e.*, each payment by check — but instead alleged aggregate amounts for transfers that were made by a particular debtor/transferor to a particular defendant/transferee. For example, it alleged that Debtor Venture Industries made transfers to Defendant Nova Industries totaling $559,344.67. This allegation is part of what the Original Complaint refers to as a summary of "the minimum preferential transfers which are the subject of this Count XI."[18] This approach is repeated throughout the table contained in ¶ 553 of the Original Complaint.

It is true that ¶ 552(e) of the Original Complaint alleges that "each" of the "below transfers" — *i.e.*, each transfer included in the summary in the ¶ 553 table — "was made on or between ninety days and one year before the Petition Date to an insider." But the Court does not interpret this allegation as *defining or limiting* the universe of transfers that are covered by the complaint. Rather, this allegation merely alleges a *characteristic* of the transfers, which may or may not be accurate. A given transfer still could be included in the *totals* "summarized" in the

---

[18] (*See* Compl. at 86, ¶ 553 (Docket # 1)).

¶ 553 table for each Debtor and each transferee, while having actually been made during a different time period than what ¶ 552(e) alleges — *i.e.*, during the 90-day preference period.  If so, that would simply mean that the allegation in ¶ 552(e) about one of that particular transfer's *characteristics* (its date) was wrong.  It would not necessarily mean that the transfer was *not included* in plaintiffs' claim, as summarized in aggregate form in the ¶ 553 table.

While this interpretation of the Original Complaint is not necessarily the only plausible one, it is the one the Court must make in deciding Defendants' motions to dismiss, because the Court must construe the Original Complaint "in the light most favorable to the plaintiff."  The Court's interpretation is also required by the liberal approach to pleadings envisioned by Civil Rule 8(a).

Defendants' argument that the Amended Complaint alleges "new claims," in the form of transfers not included in the Original Complaint, is further refuted by a comparison of the ¶ 553 table in the Original Complaint with Exhibit A attached to the Amended Complaint.  The total amount of the transfers made to each particular Defendant alleged in the Amended Complaint is identical to the total of such amount alleged in the Original Complaint.  For example, all of the alleged transfers made by the Debtors to Defendant Nova Industries as pled in the Original Complaint total $2,226,950.76.[19]  This figure is identical to the total amount of such transfers pled in the Amended Complaint.[20]  The total amount of the alleged transfers made by the Debtors

---

[19] The Court arrived at this total by adding the transfers alleged in ¶ 553 of the Original Complaint to have been made to Nova Industries ($559,344.67 + 126.40 + 251,517.74 +1,226,519.91 + 189,442.04).  *See* the table in Part I-B of this opinion.

[20] (*See* Amd. Compl., Ex. A at 11).

to Defendant Shefco, Inc. in each complaint is $1,719,109.96.[21] And the total amount of the alleged transfers made by the Debtors to Defendant, TIG Interior Design LLC in each complaint is $128,008.77.[22]

For all of these reasons, the Court concludes that the Amended Complaint does not plead any new claims or additional transfers, but merely restates the same total amount of transfers previously alleged in the Original Complaint as being avoidable preferences, while adding new details about each individual transfer.

Defendants rely on the following cases to support their "new claims" argument: *Coan v. O & G Industries Inc.* (*In re Austin Driveway Services, Inc.*), 179 B.R. 390, 397 (Bankr. D. Conn. 1995); *Peltz v. CTC Direct, Inc.* (*In re MBC Greenhouse, Co.*), 307 B.R. 787 (Bankr. D. Del. 2004); *Gordon v. Slaughter* (*In re Slaughter Co. & Assoc., Inc.*), 242 B.R. 97, 103 (Bankr. N.D. Ga. 1999); *New Bedford Capacitor, Inc. v. Sexton Can Co.* (*In re New Bedford Capacitor, Inc.*), 301 B.R. 375, 380 (Bankr. D. Mass. 2003); *Pereira v. Hong Kong & Shanghai Banking Corp.* (*In re Kam Kuo Seafood Corp.*), 67 B.R. 304, 308 (Bankr. S.D.N.Y. 1986). But these cases are easily distinguishable. Each of them held that a trustee's amended complaint did not relate back under Civil Rule 15(c)(2), when the amended complaint alleged new or additional transfers that *clearly* were not pled in the original complaint, and when the amended complaint *increased* the amount of transfers sought to be avoided and recovered from a particular party.

---

[21] The Court arrived at this total by adding the transfers alleged in ¶ 553 of the Original Complaint to have been made to Shefco, Inc. ($202,086.73 + 20,113.84 + 660,506.78 + 11,551.54 + 797,709.96 + 27,141.11). *See* the table in Part I-B of this opinion. This same total amount is alleged in the Amended Complaint. (*See* Amd. Compl., Ex. A at 38).

[22] The Court arrived at this total by adding the transfers alleged in ¶ 553 of the Original Complaint to have been made to TIG Interior Design, LLC ($13,696.47 + 114,291.10 + 21.20). *See* the table in Part I-B of this opinion. This same total amount is alleged in the Amended Complaint. (*See* Amd. Compl., Ex. A at 39).

*See In re Austin Driveway Services, Inc.*, 179 B.R. at 399-400 (the original complaint alleged that the debtor paid $79,237.03 to defendant, O & G Industries, Inc., within 90 days of the debtor's bankruptcy filing and the amended complaint sought to add a payment of $14,264.90 made to the defendant by Carl Lecher, Inc., a separate entity, which payment was allegedly made on the debtor's behalf); *In re MBC Greenhouse, Co.*, 307 B.R. at 792 (the original complaint alleged six separate transactions totaling $2,830,141.32, while the amended complaint alleged 39 separate transactions totaling $7,911,935.66); *In re Slaughter Co. & Assoc., Inc.*, 242 B.R. at 99 (the original complaint alleged transfers totaling $18,298.17, while the amended complaint increased the total to $50,298.17 and included an additional transfer of $32,000.00); *In re New Bedford Capacitor, Inc.*, 301 B.R. at 378 (debtor sought to amend its complaint to include an additional preferential transfer of $31,696.00, which had not been included in its original complaint); *In re Kam Kuo Seafood Corp.*, 67 B.R. at 305 (original complaint alleged a single transfer by the debtor to the defendant of $150,000, while the amended complaint added seven additional transfers totaling $161,535.68).

The Court's conclusion that the Amended Complaint relates back is further supported by the phrase "or attempted to be set forth" in Civil Rule 15(c)(2). That phrase may apply when an amended complaint states a claim that does *not* arise out of the "conduct, transaction, or occurrence set forth" in the original complaint. In that situation, the amendment still relates back under Rule 15(c)(2) if the amended claim arose out of the conduct, transaction, or occurrence "attempted to be set forth" in the original complaint.

As explained in *Alberts v. Potomac Electric Power Company* (*In re Greater Southeast Community Hospital v. Corp.*), 325 B.R. 340, 342 (Bankr. D.C. 2005), "the 'attempt' language of Rule 15(c)[2] was intended to allow corrections where the details of allegations in the pleading

are inaccurately set forth." (quoting *O'Loughlin v. National R.R. Passenger Corp.*, 928 F.2d 24, 27 n.6 (1st Cir. 1991)). "The question of what was attempted to be pled is determined by a test of what did the original complaint itself objectively give notice was attempted to be pled." *Id.* at 343.

In ¶ 552(e) of the Original Complaint, the Debtors alleged that the transfers summarized in the table in ¶ 553 were "made on or between ninety days and one year before the Petition Date to an insider." When viewed in the context in which it appears and in light of the elements for avoiding a preference under 11 U.S.C. § 547(b), this language clearly was an unsuccessful *attempt* to allege that the transfers were made *either* during the 90-day preference period *or* during the 90-day-to-one-year extended preference period. This conclusion is reinforced by the requirement that the Court must construe the complaint "in the light most favorable to the plaintiff." *Benzon v. Morgan Stanley Distributors*, 420 F.3d 598, 605 (6th Cir. 2005)(*quoting Inge v. Rock. Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002)(*citing Turker* v. *Ohio Dep't of Rehab. & Corr.*, 157 3d 453, 456 (6th Cir. 1998))).

The allegations in ¶¶ 552(a) through (f) of the Original Complaint, with the exception of subparagraph (e), allege that the transfers meet the statutory elements in § 547(b)(1) through (3) and (5). Paragraph 552(e) obviously was intended to allege that all of the transfers were made within one of the two preference periods of § 547(b)(4). And it is evident that ¶ 552(e) contains a typographical error where it alleges that the transfers were "made *on or* between ninety days and one year before the Petition Date to an insider" (emphasis added). Inclusion of the words "*on or*" in this sentence makes no sense. When comparing the language used in ¶ 552(e) to the language of § 547(b)(4), however, the typographical error is readily apparent. Section 547(b)(4) states that:

a trustee may avoid any transfer of an interest of the debtor in property —

. . . .

(4) made —

> (A) on or *within 90 days before the filing of the petition*; or
>
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider[.]

11 U.S.C. § 547(b)(4)(emphasis added).  Right after the words "made on or," ¶ 552(e) of the Original Complaint omits the italicized language in the statute just quoted — "within 90 days before the filing of the petition."  The drafter(s) of the Original Complaint obviously intended to include this phrase in ¶ 552(e), after the words "made on or," so that ¶ 552(e) was *intended* to say that the transfers were "made *on or within 90 days before the filing of the petition*; *or* between ninety days and one year before the Petition Date to an insider" (emphasis added).

For these reasons, the Court concludes that the language used in ¶ 552(e) in the Original Complaint was an *attempt* to allege that all of the transfers were made either during the 90 days before the bankruptcy filing or during the extended preference period.  Upon reflection, this is obvious to the Court, and it should have been obvious to Defendants' counsel.[23]  It would make no sense for the Debtors to seek avoidance of preferential transfers made during the extended preference period, but *not* transfers made during the 90-day preference period.  The latter are generally easier to avoid than the former.  Transfers made during the 90-day preference period need not be made to or for the benefit of an "insider," and the § 547(b)(3) insolvency element for

---

[23]  While a typographical error like this is troublesome, it is perhaps not terribly surprising in this case, given the complexity and length of the Original Complaint — 565 paragraphs covering 91 pages.

avoidance is presumed during the 90-day preference period but not during the extended

preference period.  *See* 11 U.S.C. § 547(b)(1), (b)(3), and (b)(4), and § 547(f).

In the words of Civil Rule 15(c)(2), then, ¶ 552(e) of the Original Complaint "attempted

to" set forth transfers that occurred during the entire one year preference period of § 547(b)(4),

not just transfers made during the extended preference period.  In alleging transfers made during

the 90-day preference period, then, the Amended Complaint relates back to the date of the

Original Complaint.

### E.  Defendants' other arguments for dismissal of the Amended Complaint

Defendants argue that the Amended Complaint does not meet the requirements of Civil

Rule 8(a), based on claimed inadequacies and errors in the Exhibit A attached to the Amended

Complaint.  Exhibit A is a 49-page, six-column chart.  The headings of the six columns are:

"Trust Company," "Vendor Name," "Check Date," "Check Number," "Check Amount," and

"Date Check Cleared Bank."  The chart provides these details about some 4,000 separate

transfers.

Defendants argue that Exhibit A does not contain all of the necessary types of information

about the alleged preferential transfers.  And Defendants argue that Exhibit A has numerous

obvious inaccuracies.  Defendants again rely on the pleading requirements established in the

*Posman* and *Valley Media* cases.  As discussed in Part IV-C of this opinion, however, this Court

rejects the heightened pleading standard of those cases.  And the Court concludes that

notwithstanding the missing details and alleged errors in Exhibit A, the Amended Complaint

does state claims upon which relief can be granted, and does provide Defendants with a "short

and plain statement of the claim[s] showing that the pleader is entitled to relief."  Fed.R.Civ.P.

8(a) and 12(b)(6).

The Court will address the Defendants' specific arguments about the defects in Exhibit A.

**1.  No invoice information and errors regarding check dates and check numbers**

Defendants argue that Exhibit A is deficient because it (1) fails to provide the Defendants' invoice dates and invoice numbers for the invoices paid by any of the alleged transfers; (2) lists some obviously incorrect check dates; and (3) lists some check numbers only as dates, such as "3/11/2003" or "3/28/2003," which provides no guidance about the actual check number.

As to the invoice information, it is not necessary to include this in a preference complaint in order to state a claim upon which relief can be granted.  This may be required by the heightened pleading standard Defendants advocate, but this Court has rejected that standard. Defendants can obtain this information in discovery.

As to the alleged errors in check information for some of the transfers, during the final hearing on the motions, Trustee's counsel acknowledged that there are some errors in Exhibit A, and explained that these errors are due to a defect in the software program used to prepare the exhibit.  Trustee's counsel suggested that the errors can be rectified and that the Trustee can provide Defendants with a corrected chart.  In any case, these alleged errors in Exhibit A do not require dismissal of the Trustee's claims with respect to any transfer.  Again, Defendants can obtain the corrected information, and any corrected chart, in discovery.

**2.  Identity of the debtor/transferor**

Next, Defendants argue that Exhibit A fails to adequately identify the specific debtor/transferor with respect to each of the transfers, because the debtor/transferor is identified only by such names as "Interior," "Exterior," "Service," "Almont," "Bailey," or "Canada," under

the column entitled "Trust Company," rather than by the transferor's formal corporate name. Defendants argue that this requires them to guess the identity of the alleged debtor/transferor.

The Trustee disputes this. The Trustee argues that the names used in Exhibit A are the "internal account name[s]" of the Debtors.[24] And at the final hearing on the motions, Trustee's counsel explained that some of the debtors did business under these other names. For instance, Venture Industries did business as "Interior;" Venture Mold & Engineering did business as "Almont;" Vemco, Inc. did business as "Exterior;" and Venture Holdings did business as "Bailey." The Trustee argued that because the Defendants were insiders of the Debtors, they know about the assumed names used by the Debtors. In any case, under the liberal pleading standards discussed in part IV-C of this opinion, the Court concludes that the Amended Complaint need not be more specific than it is in naming the debtor/transferor for each transfer, in order to survive the motions to dismiss.

And it is not necessary or appropriate at this stage of the case to try to resolve any dispute between the parties about which, if any, of the Venture Holdings bankruptcy debtors correspond to the "internal account names" used in Exhibit A. Rather, it is enough that ¶ 6 of the Amended Complaint, when viewed "in the light most favorable to the plaintiff," alleges that each transfer listed in Exhibit A was made by one of the Venture Holdings bankruptcy debtors.[25] The Court must accept this allegation as true for purposes of ruling on the motions to dismiss.

### 3. Transfers by the entity referred to in the Amended Complaint as "Canada"

---

[24] (*See* Trustee's Consolidated Response to Defendants' Motions to Dismiss at 6 (Docket # 22)).

[25] (*See* Amended Complaint at 1 (Docket # 10)(defining the word "Debtors" to mean, collectively, the debtors in the Venture Holdings bankruptcy cases) and ¶ 6.)

Defendants argue that Exhibit A identifies one of the transferors as being "Canada," and that this must be a reference to an entity known as Venture Industries Canada, which did not file bankruptcy. A transfer from that entity, therefore, could not possibly be avoidable as a preference under § 547. During the last hearing, the Trustee's counsel conceded that any claims to avoid alleged preferential transfers made by "Canada," also known as Venture Industries Canada, should be dismissed. Because the parties agree on this point, Defendants' motions to dismiss will be granted as to each of the transfers alleged in Exhibit A to have been made by "Canada" to any Defendant.

## V. Conclusion

For the reasons stated in this opinion, the motions to dismiss will be granted in part (*i.e.*, only as to transfers allegedly made by "Canada,") and otherwise denied. The Court will enter a separate order.

**FOR PUBLICATION**

**Signed on October 15, 2007**            /s/ Thomas J. Tucker
                                          **Thomas J. Tucker**
                                          **United States Bankruptcy Judge**